room deputy has already given the official cry but I'll repeat to you that we do have time limits here there'll be a little different than normal but as in all of our cases we have read the briefs and record excerpts we have not necessarily gone into the complete record so we appreciate record citations what we're going to do as you probably know is give each of you half of your a lot of time uninterrupted and then we will begin with questions starting with Judge Higginson then Judge Elrod and then myself we may have to run a little bit longer for that purpose but we feel that will facilitate our communications here we'd like you to look up when you're talking into the also want to remind you to silence any personal cell phone that may be in the area and also that we are prohibiting video photos and recordings of this session the same as we would in New Orleans and I will try to give you a notice you're open to questioning so with that we will start with Mr. Flores for defense distributor may it please the court the district court's judgment in this case should be reversed for two primary reasons the jurisdictional position that New Jersey's Attorney General took below is wrong and contradictory it's wrong because under the due process clause Gerber Great Wall did indeed purposely avail himself of Texas by literally becoming the Attorney General of Texas censoring Texas speech that was of by and for Texans now we will hold fast to that proposition because it accords not just with the first principles of personal jurisdiction but also with the governing precedents of the United States Supreme Court and this court I think it would be a disservice for me to stand up here today and just pound the podium and say Calder as many times as I can and I likewise think it would be a disservice if my friend on the other side pounds the table and says Stroman as many times as you can the court's task to navigate those precedents and but that is not our strongest argument and that is not the simplest reason to reverse the strongest and simplest argument is the contradiction the estoppel argument Gerber Great Wall should not have been allowed to take the position that he took below because in the Washington case he took the opposite position and used it to his advantage and that's what we'd like to begin the argument today is with estoppel this is a paradigm case of gamesmanship trying to have it both ways just because one litigant likes one court better than another and is trying to engage in forum shopping your honor will be happy to yield the remainder of our interrupted time and accept questions whenever the court is ready to watch them and I'll begin the estoppel argument by saying what we're not arguing we're not arguing a full-fledged preclusion argument and as we're not arguing that the court in Washington actually rendered a holding about who can and cannot be sued in Texas the reason we're not making that argument is because we don't need to make that argument the estoppel argument applies not just to the bottom line holdings that a court renders and not just to the bottom line conclusions that a litigant takes it applies both to what you would think of as a court judgment and the court's opinion and its holdings it applies not just to the bottom line position the gray wall asserted but also the positions that are necessarily entailed and so the position we say he took in Washington is that website control equals minimum contacts now for a long time in the litigation gray ball denied taking any position whatsoever and you see in the 11th hour letter we get last week gray wall admits the following if he did argue in the alternative that defense distributed had minimum contacts with Washington there are two problems with that will accept the concession in so far as it goes but the problems are that number one it wasn't in the alternative he took that position in first instance and that's only half the position I think if we determine anything it's based argument we should have counsel for gray wall finish the sentence he says defense distributed had minimum contacts with Washington because there has to be a reason that there are minimum contacts and there is only one reason there's only one way to finish that sentence and that finish is that defense distributed controlled the website in that case in the Washington case the only thing at issue is website publications and you'll see from the very get-go not just later in summary judgment briefings document one filed in the case is the complaint document one says in paragraph 13 that the court has personal jurisdiction over the parties document one says in paragraphs four through six that defense distributors only relationship with Washington is that it turns the switch on the website and broadcasts a website from Texas to the entire world you can see in paragraph 21 of the complaint where gray ball says that the court in Washington defense distributed is a necessary party so that's the position that he necessarily took it that minimum contacts exists because defense distributed is controlling the website and the reason that that contradicts the position here is because the jurisdictional keystone is the same what we're talking about in both cases is a jurisdictional debate about website control in this case we say great all this subject personal jurisdiction passes that he shut down the website because he wants the sense of the website he put his hand on the switch and took it down by sending that season business letter into Texas now what we have in Washington is just the flip side that's litigation about people that refuse to censor the website they refuse to take it down and refuse to flip the switch down there they're suing the federal officials because the federal officials aren't willing to censor this website so vis-a-vis defense distributed and gray wall you have two sides of the same coin in Washington gray wall says defense distributed can be sued because they control the website if that's true he loses the case below because he did that and more here the contradiction is evident and he profited from it he advantaged from it in Washington in at least four ways he got the temporary restraining order he got the preliminary injunction he got an order holding the defense distributed is a necessary party to that litigation and he got the final judgment so I know one of the arguments very well has is that later in the Washington litigation there's a dispute about waiver and whether the issue of personal jurisdiction was litigated to the T there we disagree we have lots of to get there we can show you the advantage that gray wall got with that position in two days of litigation day one he filed a complaint day two he got the temporary restraining order if ever there is a scenario and when courts where courts are supposed to apply this doctrine with vigor it's that scenario what we're talking about the nationwide injunction blitz strategy where a litigant goes into court and says to the court this is our complaint they ask for a TRO to be issued the next day and they get it the court absolutely relied on that filing that is precisely the kind of advantage that triggers judicial estoppel so the precedents we have for this is one that we cite one that they cite the New Hampshire case when the United States Supreme Court tells you that the judicial estoppel doctrine is implicated not just by express bottom line holdings of a court decision but also by implied reliance if the court impliedly relies on some represent representation a litigant has made the doctrine applies you also get that same rule from this court's Hall decision which judge Jones was on and will recall that cited in their briefings court will indulge me I'll read two pieces from Hall that I think are instructive and worthwhile first is on the question of whether in order for estoppel to apply we need a final decision as opposed to a preliminary decision and Hall says that either will suffice if they even derive an advantage at a preliminary stage that's enough the quote from Hall is as follows the previous court's acceptance of a party's or as a final disposition so we have both in this case and either will suffice to get across the line the second thing that Hall talks to is this issue of express reliance and an express holding something that resolves a dispute on the merits as opposed to simply an advocate making a representation that they know the court will need to rely upon and Hall stands with a proposition that that second kind that implied reliance is enough to satisfy judicial estoppel here's the quote I want to read you the judicial acceptance requirement does not mean that the party against whom the judicial estoppel doctrine is to invoke must have prevailed on the merits instead of the court says it's quote doctrine may be applied whenever a party makes an argument with the explicit intent to induce the district courts for life when Gray Wall went to the court in Washington filed a complaint asked for the TRO similarly when he asked for the preliminary injunction the whole case is predicated on the notion that defense distributed is a necessary party and that they have personal jurisdiction over defense distributed now my friend today I think is going to stand up and try to finish the sentence and say defense distributed excuse me that the state of Washington defense ribbon has minimum contacts with the state of Washington because and his only answer to that question can be if they have minimum contacts because defense distributed control the website that's exactly what happened in this case in Texas the same jurisdictional keystone exists in both cases and so at bottom what you have is gamesmanship trying to have it both ways this is is really indeed a clear case of forum shopping well mr. Flores why weren't you able to persuade judge Pittman about that I'm sorry I say apparently you did not persuade judge Pittman right Pittman about this right I didn't because I think judge Pittman took the view that the only thing that matters is the holding I think judge Pittman may have mistaken our argument for when a full-fledged preclusion right he tried to ask the question did the court in Washington render a holding about who can be sued in Texas it didn't that was dispositive for him but that's not the answer under the estoppel doctrine the estoppel doctrine looks at the position that the litigant took and you don't actually have to have litigated there if we had litigated it in the state of Washington then we'd be a preclusion argument but these are entirely separate doctrines that proceed for entirely separate reasons remember preclusion is designed to protect mostly the litigants the judicial estoppel doctrine is designed to protect the courts it serves different interests and so that's why most of my argument here today is focusing on what Graywell said to the court in Washington and what the court had to necessarily rely on when it issued the TRO and when it issued the preliminary injunction okay um do my colleagues have questions since he opened himself Judge Elrod yes I was wondering if I understand your distinction of Stroman it's your distinction that this cease and desist letter is not limited to to the New Jersey residents and property it extends to Texas residents and Texas property as well so it's not similar in that way is that your argument or is it something different we have that argument and more your honor so that argument we call the letter focus argument you'll see that we think this case sits under Calder and not Stroman because the letter focuses on Texas both with respect to what it talks about and where the impact is felt and what you just described is the letters what the letter talks about right here the letter is talking about a website in Texas it's talking about shutting down that website and silencing people that are all in Texas and so we think the letters focus is Texas both in what it's addressing the actual computers that they flip the switch and tell the website to publish are in Texas and so any reader of the letter that Grayball sent is going to understand it that way now we don't dispute that the letter certainly pays lip service to the notion that Gerber Grayball is trying to help New Jersey and advanced New Jersey interests by doing this but the gist of the letter the focus of the letter is absolutely Texas and we think it's more so than the letter in Stroman recall that in Stroman the dispute was about Arizona real estate properties and the letter says stop doing things that affect Arizona real estate stop doing things that affect Arizona citizens now we don't deny that the letter in Stroman also had some Texas implications because there were people in Texas and that's why I say our distinction isn't going to be the most beautiful distinction in the court is cabined a little bit by typical precedent but there is a spectrum and our letter is much more Texas focused than the letter in Stroman I have two other distinctions so one of the distinction is about the kind of cause of action involved recall that in Calder itself and in Calder as the court recapitulated it in Walden the cause of actions uniqueness matters it matters right that the libel cause of action in Calder was something that has its impact in the message itself but it's felt by the people and their relationships around them the censorship cause of action for chilling speech is like that right the letter itself is the actionable wrongdoing now my friend on the other side his best answer he says to Calder he agreed that Calder applies if the message itself is the actionable wrongdoing but he denies that in this case the message itself is the actionable wrongdoing he's just wrong about that should I ask a follow-up about this this is not just limited to website though this is limited to any type of publication right so being in the library you could put it on a t-shirt you could hand out pamphlets or yard signs etc am I correct or is that wrong no you're on you're correct we understand his position to be that any publication of these of this information violates New Jersey law that's both on the internet we also had before Grey these files on USB drives that is stock there is a brick-and-mortar library in Austin Texas they used to publish these matters that now is covered by defense by Gray Walls law so it isn't just the internet it's essentially a total speech crime that bans everything my last question is is this this is already on the internet all over the internet isn't it it is your honor that leads right other places that's right so our third distinction is that you could maybe construe Stroman as a case where the state official was actually enacting a policy that is uniform nationwide that is not this case this is a targeting case and we don't just infer that from the letter we have specific record proof that it's a targeting case remember the gray wall stood at the podium and that he's going after quote a Texan named Cody Wilson and one of the claims in this case is selective prosecution the whole point is that defense distributed publish this information online already thousands of other people publish the same information online every day right now and he's not going after them so this isn't a side point this is a crux of the case and so if we want to distinguish Stroman we can say fine if a state official really does uniformly apply some policy and go to all 50 states equally and maybe that would be a Stroman case we have some other quibbles with that theory but just set it to one side this isn't that case because there's targeting of just defense distributed just Cody Wilson the Texan the gray ball called out by name and so if anything fits into the Calder model it's that I think the challenge for the other side is to say in this case if this kind of targeting evidence doesn't fit doesn't get us into Calder what does right they can't explain why this case fits into Stroman without rendering Calder a dead letter I think that's a Higginson you have questions yes I would love to ask them is it do it do I have time may I go ahead sure we're good little extra time okay I have three questions one is legal one is factual and one is rule of law I did read the district court hearing and it did seem like a showdown between Calder and Stroman but of course Stroman does interpret and distinguish Calder my reading is Stroman's been cited positively over 500 times including the saying that it stands for the proposition that the Texas long-arm statute does not extend to defendant officials what is your best or any federal court case where in outcome not dicta a defendant official was obliged to defend its state's laws in another state I don't have that case your honor the argument as I understand it from the other side is that Stroman renders that holding to defeat that any case where a defendant official was obliged to defend that state's law federal case and the reason I'm focused on it is you cite heavily back page but back page of course the Dallas headquartered back page actually goes and sues where the Cook County Sheriff is in northern district of Illinois so your honor I don't have one at my disposal but I'm confident that we can supply one and I'm not interrupting out of rudeness I just have so little time and this is a difficult case you know you've done it all you've been litigating all over the country my fact question the cease and desist letter here this is because if we were to distinguish Stroman it might have to do with what the letter says the first sentence does say stop publishing quote or use by New Jersey residents nowhere do I see the word Texas in the letter so it's hard for me to say that New Jersey is trying to have its broad and focal point be on Texas opposed to anywhere in the country so we would have two answers number one Texas appears on the letter in the address that's where they sent and delivered the letter and besides don't dispute that so they delivered it into Texas and our position is that even though the letter pays lip service to New Jersey any reasonable reader in these circumstances can only understand the letter to me one thing shut down the website it great wall doesn't want this to mean shut down the website have him say so today because that would be a dramatic shift in litigation yeah and if I made my last question and I appreciate your succinct answers I was on a panel in 2016 and again you guys may be so cognizant of our case law that you'll know the case even though I acknowledge it's not in the table of authorities but it came back to my mind it was Google versus hood and the panel there overturned Google's First Amendment ordinary injunction against the Mississippi Attorney General who was trying threatening Google that their internet content was in violation of Mississippi law now would the rule of law you're urging us to adopt the distinguishing of Stroman mean that Google could have hailed Mississippi's Attorney General into California to defend its law or is there a limiting principle I'm missing I don't know if there's a factual distinction I think our legal rule would be that if the letter the communication itself delivers the cause of action then the person has conducted purposeful availment and that's not just our rule that's the rule we draw from we air so if there's a fact okay thank you no you're right the lean air thank you thank the judge Jones that's all right I I don't have much anything to mom may it please the court Jeremy Feigenbaum on behalf of New Jersey Attorney General Greer gray wall appellants advanced a theory of personal jurisdiction that has never before been accepted in an ex parte young case and that should not be accepted by this panel today appellants believe that a Texas resident can hail another state's official into Texas court to stop that official from enforcing his own state's laws in order to protect his own state's residents wrong okay go ahead sorry it's okay honor states have an interest in defending their laws and their expert courts and they also have an interest in avoiding the inconsistent judgments across circuits that appellants rule would generate and as this court already explained in Stroman realty nothing about that analysis changes just because the state official sent that Texas resident a single cease and desist letter warning him not to distribute a specific item to his state's residents in ways that he explains would violate his state's laws Stroman realty got it exactly right that single cease and desist letter especially one that does not provide the state official with any personal or economic benefit does not reflect an effort by the state official to purposefully avail himself of Texas law and Texas as a forum and it's not a basis for personal jurisdiction in Texas courts are three pillars to my argument today which I'll lay out and then judge Jones I'm happy to entertain any questions first Stroman realty is directly on point and there's no basis to distinguish that decision in any way that would suggest purposeful availment of Texas as a forum second there's no basis to abrogate Stroman realty which has only been strengthened by the intervening Supreme Court decisions that further cut back on effects jurisdiction and third the New Jersey Attorney General is not a stop for making this argument to this court judge Jones I'm happy to continue or I'm happy to entertain questions now well I have this question about the application in Stroman which I'm pretty familiar and that is so there's a critical difference here the Texas timeshare company could have complied with the Commissioner from Arizona's request simply by adding a footnote at the end of any of its solicitations this does not apply in Arizona and in fact on the internet and in commercial law all the time in an interstate context we see where solicitors put in footnotes that says not apply in Montana Arizona California New Jersey etc mr. Graywall has a target far beyond that mr. Graywall is marching into Texas and telling the website to shut down so that defense distributed will not have anything on the internet how do you how do you reconcile that how do you bring that under the aegis of Stroman you know all right I disagree with the characterization of what the Attorney General is trying to do in New Jersey and I think that will help explain how we believe this case could be resolved so as a general matter and as we've explained we do believe that there are ways for defense distributed to come into compliance that would prevent these files from ending up in New Jersey which has always been the touchstone of the analysis it you can see that from the letter at page 178 of the record where we talk about files being sent for use by New Jersey residents and you can see it in the text of our criminal law which is to see 39-9 l2 which specifically only criminalizes the distribution to a person in New Jersey so and I will note of course if mr. Graywall was threatening criminal prosecution even before there was a criminal law your honor in the cease and desist letter we were focusing actually on our public nuisance law I understand that and that was and that was our civil common law in which we were lying not the criminal law before it had passed but he had also already targeted mr. Cody what's his name individually so the sentence that mr. Flores was referring to which appears at 396 and 397 of the record is from a press conference at the bill signing for the new criminal law in New Jersey and I think it's actually important to see exactly what the New Jersey Attorney General said in the record there because it helps to explain exactly why we is Truman and in no way reflects targeting or purposeful availment of Texas at that press conference the New Jersey Attorney General at a bill signing for a new New Jersey law says from Trenton New Jersey that his message is quote to anyone trying to sell their dangerous weapons into New Jersey that he's trying to stop the next company like defense distributed and fight the ghost gun industry by making clear that telling these guns in New Jersey is illegal there is no question that he did talk about defense distributed and their founder specifically because defense distributed and their founder were the ones publicly telegraphing their desire to violate New Jersey law but he made clear that from whatever state that individual resided or that company was incorporated whether it was Arizona or California or Illinois the time was to New Jersey and he would be going after to try to stop that dissemination all the same there's no evidence that he was purposely availing himself of Texas as a forum and Texas law in any of those directions and I think mr. Flores is admission is telling that the only way to know from either our criminal law or our cease and desist letter that the case involves Texas is because the word Texas appears in defense distributed address the address block is defense distributed own connection to Texas where defense distributed chose to take its action to post these files accessible to New Jersey residents that was their own decision it wouldn't have mattered to the New Jersey Attorney General whether or not this person was in Arizona or in Illinois or any other state and at page 485 of its opinion Truman actually explains why that distinction would not be relevant so in Stroman there was also a question about whether the Arizona Commissioner was trying to reach into Texas and take steps that would limit what an individual could do in terms of posting on the Internet from Texas and at page 485 this court said that it may be true that the conduct was occurring entirely in Texas but where those interactions were involving Arizona residents the Arizona Commissioner was essentially asserting nationwide authority to prevent those interactions that's what we have here and that's why we believe that as a general matter if defense distributed took proper steps to block dissemination to New Jersey but all right what what what is proper dissemination so one of the issues with this case shutting down the website there are absolutely steps defense distributed could take other than shutting down the website right now there are companies that distribute USB files to other individuals in person that New Jersey has never taken a position over so if defense distributed maintained a website that similarly blocked access to New Jersey that would be enough now I understand Mr. is going to raise questions about that and I'd like to address them here how do you tell your internet service providers to block access to New Jersey oh that's something that happens in other contexts all the time so for example in the casino system for online gambling some states allow online gambling and some states don't and so they block by IP address who's able to enter so if your IP address comes from New Jersey who is a in this case the casinos the companies they're required by law in New Jersey right now to block anyone from New York or Pennsylvania that try to access online gambling because the laws are different in those states and so you can't actually fit in New York City and it's like gambling I'm I'm pretty I'm pretty much of a technical but those are not publicly accessible websites you've got to get on those and register and possibly even be a member pay something in order to participate whereas this is just like a news service this is like Yahoo News basically your honor it's actually quite clear that any website even a publicly accessible one can block IP addresses from certain locations I don't think mr. Flores is going to disagree with that as a technical matter and there are other websites that have posted similar files that blocks New Jersey addresses and other states that were involved in the Washington District Court litigation so I don't think there's any significant factual dispute that it's technically possible to block IP addresses coming in from New Jersey and so I think that that's a significant basis to rely on for understanding that the New Jersey Attorney General is focusing specifically on tying to New Jersey and I'm certainly making that representation to you today so facts that we'd also want to know as part of that analysis would be deed defense distributed encourage any of its  files there and bring them back into New Jersey that would certainly raise a question but the fact of blocking the address so long as they know that they have an effective geolocation system and they're not working to do work around for that system certainly addresses the questions under a New Jersey statutory framework and goes to the heart of the public nuisance analysis that the New Jersey Attorney General was talking about do my colleagues have questions yes but but do you want to go with judge Elrod first or sure okay so you began your argument by talking about that there would be conflicts in the suit in the circuit law if if this were allowed to create a conflict in the circuit law if there were to be one by going to the nice dark circuit instead of staying in your own circuit so the idea that we have to stay within your circuit you've already you've already chosen to go to other circuits isn't that correct not at all your honor what happened in the Ninth Circuit and in the Western District of Washington was a challenge to the federal government rules that were being changed relative to the challenge to how New Jersey law would operate how Washington state law would operate or how Texas law would operate and there's challenges across circuits to federal law all of the time but the basis of the jurisdiction over this over defense distributed is this is the argument that we're talking about today and it's the same type of argument that is made in Washington in Western District of Texas and in the federal Court of Appeals it governs New Jersey so the question in the cases we're talking about is when a state defendant can be held into court different from when a private company can be held into court and a state defendant is the one that's at stake in the Texas case and would be at stake in the New Jersey case where there's already an ongoing violence so those are the questions we're talking about so you don't think there's any tension that you've already created and you think you can argue this that way can we please talk about the idea about the fact that it's a state defendant you keep talking about not done for commerce and that sort of thing but the law and statute covers anyone anyone who commits a tort in whole or in part in the state and it's not limited to commercial transactions you don't have to personally benefit it you have to commit a tort in the state so I'm at I don't understand the relevance of you repeatedly saying well the Attorney General's not making any money off of it so that was relevant to the constitutional analysis although it also ties into the statutory analysis Stroman Realty actually raises that very question and answers it in Stroman Realty the court says is it possible that this ex parte young case is about a tort and answers squarely that the faithful application of an allegedly unconstitutional law which is the basis of an ex parte young action is not a tort in the way that that statute understood it so that was specifically the question presented by Stroman Realty and admittedly although the statutory holding was dicta it's been followed by every federal court subsequently to consider the question so that court did draw a distinction between the application of allegedly unconstitutional laws and traditional tortious conduct and it makes sense that the difference would apply here because allegedly tortious conduct involves the kinds of actions that show a targeting of Texas whereas the enforcement of allegedly unconstitutional laws simply shows that a resident of Texas is trying to enjoin application of New Jersey law targeting a resident of Texan impeached by Texans your letter here from me from your Attorney General would demand halt demand that you halt publication of the printable gun computer files it is not limited to on the computer does it uh you're on the website it means it would limit it period any publication I don't know if you're familiar but um a number of years ago there was a lot of litigation about the CSS de-scrambling DVD technology and the students of Carnegie Mellon showed all the ways that you could publish information they put it on ties and t-shirts they made a film it was it was to show that it's not just on the internet and in fact in this case they needed to they used to mail this out would your letter apply to a mailing between two Texas residents no your honor it would not how do we know that we knew that from the text of the law and public nuisance law as described in New Jersey that's the very challenge letter if you just received the letter how would you know that it didn't apply to the library and and a letter between two Texas residents because of the first sentence of the letter which says you are directed to cease and desist from distributing these files for use by New Jersey residents mailing a USB file from a resident in Austin to a resident in Dallas is not for use by New Jersey residents and you would know that from the face of the letter but the but the last sentence of the letter says as the chief law enforcement officer for from New Jersey I demand that you halt publication of the printable gun computer files should you fail to comply we will initiate immediate legal action so if you go by the last sentence which is one that's actually saying they're going to initiate action that this is an ultimate sentence it says you must halt any publication of the printable gun files your honor the entire letter describes the harms in New Jersey residents the public nuisance law in New Jersey the we have a criminal law in New Jersey the entirety of the letter in the action is a tie-in to New Jersey I think a hypothetical might show something similar here which is to imagine that you have a California doctor that's prescribing synthetic opioids as non-addictive and he's doing that on a website applied to Texas residents and the Texas Attorney General sends a letter saying we have a you cannot distribute these for use by Texas residents and here's the relevant Texas law and at the end he says so stop distributing these I don't think anyone believes that a doctor would be able to hail Texas's Attorney General into the Ninth Circuit to defend the validity of a consumer fraud law and I think the same would be true and say the medication abortion context stop distributing stop distributing period as opposed to stop sending to people in New Jersey it could you put a website disclaimer judge Jones had asked questions about website disclaimers could defense distributed avoid running afoul of receipts in distress good fifth by saying New Jersey people please do not download these files because you may be running afoul of New Jersey law no your honor but they could do it by blocking New Jersey IP address I don't have to do that method rather than the other we do that for wine businesses we do that for um college gambling other things where well I know where you where you can say not eligible for people who live in this day or that so there's plenty of other contexts where we don't do it for example we don't do it when you have the online gaming because the actual ability to access the things is right there on the computer you don't need a second step of mailing something like you would need wine so for example if someone had a law that limited access to pornography I don't know that simply including some of disclaimer would be enough if there was something about that law that violated the state's law you could have a blocking of IP addresses if the state law went further and there's no problem with doing that in a way that demonstrates that this is really about New Jersey instead of Texas I don't think anyone here is really disputing that the New Jersey attorney general would have wanted to take the same action if defense distributed was a company incorporated in Arizona and that shows that it's a mere fortuity that this case is about Texas and that we're discussing this in Texas federal court right now my last question is well I I used to I as a Texas judge have held someone to be coming into Texas and the court law based upon one letter that they sent into upstate why wouldn't the ween air case apply in this situation and to the extent there is a tension with stroman and stroman can't be distinguished that's assuming hypothetically why wouldn't ween air rather than stroman because it's under our rule of order that's my last question thank you your honor so I have two reasons why I believe we should be distinguished and I think that will cover both of your questions so one there's a qualitative difference and then there's a quantitative difference ween air involved a course of conduct involving multiple misrepresentations aimed at the forum and that's what the ween air court specifically held in this case we have a single letter that was sent into Texas and it was also a single cease and desist letter and if you look at the decision in Halliburton or if you even look at the explanation in Inmar which is an unpublished decision but obviously can carry some persuasive effect both of them explain in detail why the sending of a single cease and desist letter even if it's not by an attorney general but it's simply by one company doesn't demonstrate purposeful availment because it's an effort to try to avoid litigation the fact of New Jersey public nuisance law the fact of New Jersey statutory law and even the attorney general's desire to bring an enforcement action would not create a basis for jurisdiction in Texas there might be a debate about the dormant commerce clause and how far New Jersey can go but everyone would recognize that that fight would be had in the District Court of New Jersey and the Third Circuit would be able to rule on those claims properly what happened here is simply that there was the sending of a single cease and desist letter and as Halliburton explained even if some letters might be enough a cease and desist letter uniquely does not make sense to show purposeful availment because it's an effort by the sender to avoid continued litigation with that pre-existing law let me ask what was the nature I mean I understand that the nature of payroll contact with internet service providers was to threaten them if they did not take down this website right no your honor there's there's two facts that I think are relevant there so if you look at page 181 of the record we informed the company dream host of the violations of their acceptable use policy but actually there are no threats contained within we don't even say anything beyond you should be aware that there is a violation of the acceptable use policy I'd also know dream host is a California company so to the degree that appellants are relying on a sex jurisdiction here that's Walden well but that clearly indicates that the effect would be felt in Texas in other words if you're able to discourage any internet service provider for this website uh then you've censored the website entirely your honor I think my time has expired may I answer that question yes we believe that this is exactly like Walden relative to the letter that was sent to dream host it's an action that was sent to state a where the effects were themselves in state b because that's where plaintiff was that's exactly what happened involving the cash and Walden and what the court said is not enough under sex jurisdiction all right sir um yeah yeah ask a few questions I guess so but he his time has run out now he's uh judging so um I was just thinking there would be sequencing I'd get my time well I didn't get my time before so just all right then then I would ask any questions well you can ask a question or two but just be succinct um it seems to me I mean not surprisingly when the issue is purposeful availment um it is a fact probe and just listening to you both today would you agree your arguments are converging in other words if the letter had clearly said there is no enforcement in Texas I don't think they'd be saying there is jurisdiction but if your argument says that um we will enforce in Texas I'm curious if you would still contend there would be no personal jurisdiction so we think that would be a completely different case your honor for the reasons that you've described there'd still need to be an analysis of purposeful jurisdiction of purposeful availment to try to decide if we were aiming ourselves at Texas as a forum or if it was a mere fortuity that defense distributed was there but I agree the case would be completely different because it wouldn't have everything with me is the difficulty though is it seems like attorney generals state and federal are always expansive and they warn and they say we will come get you um and when the department of justice does that they know they'll have to defend the federal law anywhere um it does seem like if relevant how do you compare the back page case where a county sheriff has decided to bully something he doesn't like why would it matter why let's say let's say defense distributes very small what's the logic that they still have to go up to New Jersey when it's unclear if New Jersey will enforce against distribution in Texas too so the logic there is that to the degree that there's any question about what the law means and how far it goes which is inherent in the kind of challenges that defense distributed is talking about here it's important to have the expert courts resolving questions of the interpretation of that law as well as then assessing its validity those are the very sorts of questions simply when there's passage of a law even without a cease and desist letter that courts would want to be handling based on their own jurisdictions but you don't have the Mississippi attorney general hailed into court in California and you don't see cases about one state medication abortion or consumer fraud or synthetic opioid laws challenged all across the country and that's exactly the rule we're putting forward that when it's a state action yeah I appreciate but I judge Jones was generous to let me ask questions at all so I'll stop understood and I appreciate the opportunity to answer them thank you okay Mr. Flores rebuttal oh can't how about now yeah now I can hear you all right thank you your honor I'll start with the estoppel issue and say that we heard precious little about that now the challenge we laid was to have new jersey explain what is their basis we're saying that defense distributed has minimum contacts in Washington we said their only basis was control of the website and they have no answer whatsoever you also heard no answer whatsoever to the notion that they got an advantage from that by obtaining the temporary restraining order the preliminary injunction the order holding that we're necessary parties and the final judgment that is case closed way to solve this action without even getting into the merits but the merits matter because we're just as strong there let me do one piece of case cleanup and then get into the heart of the debate my friend talked about the Inman case and I'm sorry the Inmar case this is an unpublished decision from this court and the reason Inmar doesn't apply is because quote the activity that was attempted to regulate by its letter was employment activity occurring outside of Texas so there the letter isn't going into Texas regulating things happening in Texas it's going into Texas regulating things outside of Texas much like Stroman Realty now let me talk about the ambiguities that we have on the merits issue of minimum contacts there's a debate between me and my friend about what exactly their policy is and there's a debate between me and my friend about who else they're going after if there are any ambiguities we win that for two reasons one is procedural one is substantive the procedural reason is that this is a rule 12 motion and if there are ambiguities about this case they don't believe our pleadings then the solution is to deny the motion to dismiss and litigate us on summary judgment if Graywalt doesn't believe our pleading when we say that he's not punishing anyone else and he can try to litigate on summary judgment but he can't deny it here from the podium also that is proven in the record already you see it in our brief at pages seven and eight we have introduced reams of record proof showing that other people have published these files and he is not going after the same applies to this question of what is the policy and what he's censoring and what he's not censoring now we've seen as judge Elrod pointed out the last sentence in the letter is indeed an expansive prohibition on all kinds of distribution and this is the legal point i want to make the whole reason that the first amendment bans threat like this is because of the chilling effect because it is not the citizen's obligation to root out these details listen to the answer that you heard from my friend at first he said block ip addresses then he said with more complication block ip addresses and make sure you have an effective geolocation then he said something different he said block the addresses and make sure you have an effective geolocation and make sure that there aren't people cooperating somehow circumvent they don't have a straight answer now in fifth circuit they certainly didn't have it for straight answer in a district court and definitely didn't have it in the actual letter that imposes the censorship his argument proves our point even more this is precisely the kind of moving target it creates the speech showing no matter what he does next no matter what he promises next the last thing to say is that the argument you heard at the end is that there's some type of home court advantage for states that somehow the due process clause bakes in the notion that if states go beyond their borders and they commit wrongdoing that they somehow get the benefit of litigating at home and that just has no place in jurisdictional analysis this kind of separate holdings justice rehnquist wrote for unanimous court the one we always talk about is the first holding about how to do your traditional minimum contacts analysis and tally up the contacts the second holding there is when the defendant had lost the main debate on purposeful availment and they said ah there are these other constitutional reasons that you should shift the balance and put a thumb on the scales and the court holds unanimously no courts don't do that if he has an immunity argument to make he can make it in an immunity motion if he quibbles with the cause of action and doesn't think that the censorship should be actionable like it is under cases from the seventh circuit he can make that on summary judgment but these are not jurisdictional arguments if the panel has any further questions we're happy to entertain them otherwise i'll close by saying this the lessons that we have on both of our issues are simple for state officials on estoppel the lesson that the court would send by going to shield themselves from what they think are far out jurisdictional theories all they have to do is not use those same theories as a sword against the same opponent in the case of the same jurisdictional keystone and on the merits the message is also simple it's also administrable they have three out they have one option maybe two but not three one option is to stay at home and mind your own business don't govern conduct that happens in other states that's what we think the answer is the second possible option may be under stroman realty perhaps state officials can masquerade as federal officials and try to do something uniformly nationwide perhaps we quibble but that's not this case this is the third case where you have targeting expressly in every way imaginable and we didn't hear an answer from the other side about how to distinguish calder never say thank you okay uh thank you very much we have your arguments and we are concluded for this today